IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRACY CAIN,
Parent and Next Friend of K. W.,
And Parent Next Friend of L.C.

      Plaintiffs

v.                                              Civil Action No._____

ARTS & TECHNOLOGY ACADEMY
PUBLIC CHARTER SCHOOL, *et al,*.

      Defendants.

## MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Tracy Cain as parent and next friend of two minors, K. W. and L.C., move pursuant to LCvR 65 and Fed. R. Civ P. for a Temporary Restraining Order requiring defendants:

(1)    to immediately allow special education student K. W. and non-special education student L. C. to return to the Arts & Technology Academy Public Charter School;

(2)    to immediately compel the Arts & Technology Academy Public Charter School to comply with the terms and conditions of the July 15, 2005 Settlement Agreement executed pursuant to the Individuals With Disabilities Education Act ("IDEA"). 20 U.S.C. §§ 1400 *et seq.,* and 34 C.F.R. Part 300;

(3)    to give subsequent written assurance, in a form satisfactory to the Court, that the minors have returned to the Arts & Technology Academy Public

1

Charter School and registered for the 2005 – 2006 school year;

(4) to report to the Court, in a form satisfactory to the Court, that the July 15, 2005 Settlement Agreement has been executed in compliance with federal law, regarding defendants' compliance with any Order entered against them by this Court, until such time as this Court determines that the rights of plaintiffs are no longer being violated or in immediate jeopardy of violation, thereby making continued monitoring by the Court unnecessary.

In support of this Motion, plaintiffs rely upon the accompanying Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order, and the exhibits attached thereto.

A proposed Order is filed herewith.

Respectfully submitted,

Roy Carleton Howell, No. 415142
8003 Parkside Lane, N.W.
Washington, D.C. 20012
Phone (202) 545-0750
Phone (202) 545-0755

Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

Pursuant to LCvR 16 (a) a separate certificate of counsel is duly filed with this Court certifying that this TRO motion and the attached memorandum, exhibits, certificate and proposed order, were **hand delivered** to Christine D. Bell, Esq., Brustein & Manasevit, 3105 South Street, N.W., Washington, D.C. 20007 legal counsel for defendants.

Roy Carleton Howell

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRACY CAIN,
Parent and Next Friend of K. W.,
And Parent Next Friend of L. C.

    Plaintiffs,

v.                                                                    Civil Action No._____

ARTS & TECHNOLOGY ACADEMY
PUBLIC CHARTER SCHOOL, *et al,*.

    Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER**

**I.    INTRODUCTION**

The basis for this action and for the present Motion for Temporary Restraining Order is straightforward: The Arts & Technology Academy Public Charter School (ATA) is a licensed public District of Columbia charter school required under federal law to provide to students with disabilities a free, appropriate public education designed to meet their unique needs. On July 15, 2005 ATA signed a Settlement Agreement with plaintiffs to provide special education services pursuant to the Individuals With Disabilities Education Act ("IDEA"). 20 U.S.C. §§ 1400 *et seq.* and 34 C.F.R. Part 300. *See,* Exhibit A. On or about August 28, 2005 ATA breached that agreement by prohibiting the child to return to school.

1

As a result of ATA' violation of the Settlement Agreement plaintiffs have sustained harm and face severe harm. The appropriate and legal venue for compliance with "IDEA" is ATA. ATA can not deny the child the right to return to school, because their compliance with "IDEA" must be complete. Nor, can ATA create "half measures" where the child is not allowed to return to school, but they seek to perform tests and evaluations on a non-attending student. ATA' compliance with "IDEA" must be complete and in total compliance with the law. Indeed, when a student has been identified for evaluations and tests for special education ATA must follow evaluation procedures. 34 C.F.R. § 300.532 *et seq.*[1] ATA is obligated to determine the needed evaluation data. 34 C.F.R. § 300.533 *et seq.* Next, ATA must determine the child's eligibility for "IDEA" benefits. 34 C.F.R. § 300.534 *et seq.* ATA must follow certain federal administrative guidelines in determining eligibility and placement. 34 C.F.R. § 300.535 *et seq.* Moreover, ATA must follow specific criteria for determining the existence of a specific learning disability. 34 C.F.R. § 300.541 *et seq.* A current ATA team member (other than the child's regular teacher) must observe the child in her regular ATA classroom setting. 34 C.F.R. § 300.542 (a). Furthermore, an Individual Educational Program is executed. 34 C.F.R. § 300.344 *et seq.*, 34 C.F.R. § 300.345 *et seq.*, 34 C.F.R. § 300.346 *et seq.*, 34 C.F.R. § 300.347 *et seq.*, and 34 C.F.R. § 300.543 *et seq.* Finally, ATA must consider placement for the child. 34 C.F.R. § 300. 552 *et seq.* On numerous occasions in very late August and early September 2005 plaintiffs attempted to return to ATA for "IDEA" benefits and were denied attendance.

Unfortunately ATA steadfastly refuses to allow the children to return to school. ATA refuses to comply with its legal obligations pursuant to "IDEA." It is

---

[1] Moreover, the initial evaluations conducted by ATA must comply with 34 C.F.R. § 300.320 *et seq.*

2

manifestly apparent that a critical component of "IDEA" is full and complete compliance. Plaintiffs seek injunctive relief because, unless ATA immediately allows the child's return for special education benefits she will be deprived of the education to which she is statutorily and constitutionally entitled, causing her to suffer immediate and irreparable harm. Further, plaintiffs seek immediate injunctive relief because as a result of ATA' failure to meet its full and complete compliance with "IDEA" obligations, and the consequent jeopardy to plaintiffs' "appropriate and legal evaluations", services and/or placement, plaintiffs have suffered, are suffering, and absent relief from this Court, will continue to suffer irreparable mental and emotional damage.

## II.   FACTS

In early February 2005 plaintiff gave ATA written notice that the children would return. Moreover, in March 2005 plaintiff made demands for special education for Kenyahatta Wade with ATA, and the school promised to act with evaluations and tests. ATA never performed the promised evaluations and tests. Whereupon plaintiffs' lawyer began the investigation for a due process Hearing at the D.C. Public School's Student Hearing Office in order to seek legal remedy. At no time did ATA send by mail or messenger any subsequent forms for plaintiff to complete for her children to return to ATA-school in the fall. Plaintiffs' attorney discovered ATA' violation of 34 C.F.R. § 300.125 *et seq.* (CHILD FIND). Furthermore, plaintiffs' attorney discovered ATA' violation of 34 C.F.R. § 300.531 *et seq.*, 34 C.F.R. § 300.532 *et seq.*, and 34 C.F.R. §300.535 *et seq.* for failure to perform promised evaluations and tests of the minor. Thereupon, on June 6, 2005 plaintiffs filed a request for a due process Hearing, which

was scheduled for Hearing on July 20, 2005. *See,* Exhibit B. On July 15, 2005 ATA signed a Settlement Agreement with plaintiffs to provide plaintiffs special education services pursuant to "IDEA." 20 U.S.C. §§ 1400 *et seq.* and 34 C.F.R. Part 300. On or about August 28, 2005 when plaintiffs returned to school for special education services, the child was denied the right to attend ATA-school. Plaintiff-mother has two daughters attending ATA. The plaintiff's child Kenyahatta Wade is the learning disabled child seeking special education via "IDEA", while the second child Lexus Cain is not special needs. The sister Lexus Cain is being denied the right to return to ATA in retaliation because of her sister's "IDEA" litigation.

### III.   LEGAL AND FACTUAL ANALYSIS

#### A.   The IDEA, the Rehabilitation Act and the ADA

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, guarantees that each student with a disability is ensured a free, appropriate public education, including special education and related services, at no cost to parents or guardians, to meet the unique needs of that student. The implementing regulations for § 504 of the Rehabilitation Act, concerning elementary and secondary education, are comparable in most respects to those promulgated under "IDEA." 34 C.F.R. Part 104.

The "IDEA'" principal means of ensuring that children with disabilities receive a free appropriate education is through comprehensive and individualized evaluations and the development of Individualized Education Program ("IEP"), in which the child's parents and current teachers, along with other professionals, set forth the required components of an educational program designed to meet the child's

4

unique needs. 34 C.F.R. § 300.344 and 34 C.F.R. §300.345. Via the combined efforts of the participants at the "IEP" meeting, a written plan must be consummated that includes: (1) a statement of the child's present levels of educational performance; (2) a statement of annual goals, including short-term instructional objectives; (3) a statement of the specific special education and related services[2] to be provided to the child and the extent to which the child will be able to participate in regular education programs; (4) the projected dates for initiation of services and the anticipated duration of services; (5) and appropriate objective criteria and evaluation procedures for determining whether the short-term instructional objectives are being achieved 34 C.F.R. § 300.346.

After performing a comprehensive evaluation of the student's current functioning and needs and developing an IEP designed to meet the child's individual needs, the school must propose an appropriate placement for the child, *i.e.*, one that can meet the child's individual needs as determined through evaluation and set forth in the "IEP." The school is further required to establish and maintain a continuum of alternative placements, including regular classes, special classes, special schools, home instruction, and instruction in hospitals and institutions. 34 C.F.R. §§ 300.400 – 300.403.

Whenever the school proposes to change the educational placement of a student in special education, the school is required to provide detailed, written notice to the parents, including a full explanation of all procedural safeguards available to them, an explanation of why the school proposes to take the action, a description of any other options considered and the reasons for their rejection, a description of all bases for the school's proposal, and a description of any other factors relevant to the school's decision.

---

[2] Related services under "IDEA" include such services as psychological counseling, speech and language therapy, occupational therapy and physical therapy. 34 C.F.R. § 300.16.

34 C.F.R. § 300.504, 34 C.F.R. § 300.505, and 34 C.F.R. § 104.36. Included in the required written notice of available procedural safeguards must be notice of the right to a prior administrative Hearing if the parents disagree with the school's proposed action. *See* 20 U.S.C. § 1415 *et seq*.

In addition to the specific requirements of "IDEA" and Rehabilitation Act outlined above, the Americans with Disabilities Act ("ADA") prohibits any public entity from employing methods of administration that have the effect of defeating or substantially impairing accomplishment of the objectives of that public entity's program with respect to individuals with disabilities, in this case, the provision of a free, appropriate public education. 28 C.F.R. § 35.130 (b) (3) (ii).

By its failures to fully comply with the "IDEA" Settlement Agreement via excluding the child from school, and refusing to conduct appropriate evaluations and denying all services and appropriate placement, ATA clearly has violated the laws intended to guarantee that those services are provided and maintained.

B.  **Consequences of ATA' Illegal Acts**

As aforementioned, without the child's return to ATA for full and complete compliance with federal law as to appropriate evaluations, special services and placement considerations, the child will sustain further injury. ATA' refusal to allow the child to return to school for their compliance with all "IDEA" federal regulations, statutory duties and common law obligations for appropriate special education and related services amounts to a *de facto* termination of all services and appropriate placement. ATA is essentially escaping their federal obligations to provide a free and appropriate public education to the child by "kicking her out of the school." Pursuant to

a August 30, 2005 letter from ATA' attorney, their position is that the child can not return because plaintiff-mother did not fill out the second set of "forms." *See,* Exhibit C for the letter which denied the child the right to return to school. ATA' denial of this child's return to their school for the plaintiff's "alleged" failure to complete a second set of forms is a *de facto* termination of the child's federal rights. As aforementioned, plaintiff never received any letters or forms in the mail or by messenger from ATA, hence, ATA' allegation is false.

As aforementioned, special education determinations, evaluations, related services, and placements are undertaken only after extensive and careful consideration of a particular child's specific needs, as required by "IDEA" and the Rehabilitation Act. ATA' *de facto* termination of those services without regard for the child's needs and without any attempt to provide alternative placements and services will immediately and completely deprive the child of the educational opportunity to which she is entitled by law.

The child has suffered and continues to suffer the immediate effects of the ATA' *de facto* violation of special education determinations, evaluations, related services and placement considerations, because the benefit derived from special education services is dependent upon having those services delivered on a regular (and sometimes virtually continuous) basis, in a consistent manner, by the same personnel and providers, and in a familiar and consistent environment. The abrupt removal of this special needs child from ATA has resulted in significant setbacks to the minor's educational, emotional and social development, and continues to cause irreparable harm.

For example, this learning disabled child (Kenyahatta Wade) has a

long history of severe learning disabilities over her entire academic career, well documented in her academic records. This child has suffered inappropriate placements as a result of institutional failures to address her needs for many years. The narrative evaluations of her many teachers, coupled with extraordinary low performances on achievement tests, reveal the need for complete and full compliance with all federal rights for this child. As set forth in the **Petitioner's Motion For Judgment On The Pleading Or Alternatively Summary Judgment** filed before the Special Student Hearing Office of D.C. Public Schools, plaintiffs *sub judice* incorporated by reference the child's school records to justify an "IDEA" remedy pursuant to 34 C.F.R. § 300.125 (*Child Find*). See, Exhibit D.[3] The evidence showed that for every year of the child's academic career she has been failing, substantially behind and exhibited "problems", *to wit:*

> "COMMENTS: Kenyatta loves to take part in class discussion. She tries really hard to complete her assignments. However, second grade work is difficult for her at this time. I have modified her class work.
>
> Kenyatta works very hard at completing class work. However, it is sometimes too difficult for her to understand. Therefore, I have to make modifications for her on a lower grade level.
>
> She needs remediation in all subject areas. Kenyatta continues to have difficulty meeting and mastering grade level standards. I believe that she will benefit from additional time in grade 1. I recommend completion of MANDATORY summer school before making the final retention or promotion decision. If she fails to attend summer school she will be retained in grade 1.
>
> Kenyahatta does not stay focused when it comes to instruction. She does not complete any of her work. . ."

---

[3] For evidence as to this child's historic very low performance on achievement tests, read plaintiff's Exhibit C in detail.

8

While the immediate threat to this child's well being may be averted if allowed to return to ATA for "IDEA", Rehabilitation Act and ADA benefits, the larger, more pervasive problem is ATA' failure to address all the special education needs, and appropriate placement of this child.

### VI.     ARGUMENT FOR TEMPORARY RESTRAINING ORDER

In order to grant injunctive relief,[4] a Court traditionally must find that the moving party meets four elements: (1) there is a likelihood of success on the merits; (2) irreparable harm to the movant; (3) an injunction would not substantially harm the rights of the defendants; and (4) an injunction would be in the public interest or at least not be adverse to the public interest. *See e.g.,* Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 842-44 (D.C. Cir 1977); Adams v. Vance, 570 F.2d 950 (D.C. Cir. 1977); Sea Containers Ltd. v. Stena AB, 890 F.2d 1205, 1208 (D.C. Cir. 1989). Under Holiday Tours, the factors must be viewed as a continuum- more of one factor compensating for less of another. The necessary level or degree of likelihood of success will vary according to the court's assessment of the other factors; when the other three factors strongly favor interim relief, a court may grant injunctive relief when the movant has merely made out a "substantial" case on the merits. Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d at 843.

In the case of a violation of a federal statute, however, "a court need not inquire into the traditional requirements for equitable relief." Community Nutrition

---

[4] Plaintiffs have complied with LCvR 65.1 (a) by filing an appropriate certificate that defendants *sub judice* have been served by hand a copy of this TRO proceeding, therefore, the question of *ex parte* application for TRO is moot.

9

Institute v. Butz, 420 F. Supp. 751, 753-754 (D.D.C. 1976). This doctrine was established over fifty years ago by the Supreme Court:

> [W]e are satisfied that this new case does not call for a balancing of equities or for the invocation of the generalities of judicial maxims in order to determine whether an injunction should have issued. The equitable doctrines relied on do not militate against the capacity of a court of equity as a proper forum in which to make a declared policy of Congress effective. United States v. San Francisco, 310 U.S. 16, 30-31 (1940).[5]

As demonstrated above, ATA' actions (or inactions) to date constitute a gross violation of its legal obligations under "IDEA" and the Rehabilitation Act. As discussed above, ATA is required, under "IDEA" and the Rehabilitation Act, to provide a free, appropriate education to students with disabilities within its institution, including eligibility determinations, special services and placements. Additionally, ATA clearly violated the provision of the ADA, as aforementioned herein, which prohibits any public entity from employing methods of administration that have the effect of defeating or substantially impairing accomplishment of the objectives of its programs with respect to individuals with disabilities.

By ATA' *de facto* termination of the child from school under the aforementioned circumstances, ATA has violated the provisions of "IDEA" that prohibit any change in an individual student's placement without detailed written notice, and the opportunity for a prior Hearing if the parents object to the change.

Even assuming, *arguendo,* however that appropriate proceedings were now underway to change the placement of this child, ATA is still obligated to maintain this child in her current placement until all appropriate administrative procedures,

---

[5] *See also,* Tennessee Valley Authority v. Hill, 437 U.S. 153, 193-194 (1978); Securities Industry Ass'n v. Board of Governors, 628 F. Supp. 1438, 1443 (D.D.C. 1986); National Wildlife Federation v. Andrus, 490 F. Supp. 1245, 1256 (D.D.C. 1977).

including notice and opportunity for Hearing, have been completed.

It is well-settled that, during the pendency of any proceeding regarding a change in placement, the "IDEA" requires that the student's current educational placement be maintained. 20 U.S.C. § 1415 (E) (3). Under this "stay put" provision, plaintiffs, *sub judice*, "are entitled to injunctive relief without further proof, and it is not necessary for them to satisfy the usual requirements for injunctive relief." Saleh v. The District of Columbia, 660 F. Supp. 212, 214 (D.D.C. 1987). *See also* Cochran v. District of Columbia, 660 F. Supp. 314, 319 (D.D.C. 1987) ("the [IDEA] provides for an automatic preliminary injunction to maintain the child's . . . current educational placement during the pendency of the proceeding" (emphasis added)). Moreover, there are no exceptions to this requirement of an automatic preliminary injunction. Doe v. Maher, 793 F.2d 1470, 1486 (9th Cir. 1986), *aff'd* Honig v. Doe, 484 U.S. 305 (1988).

Thus, this Court should grant the relief sought by plaintiffs at this point without any further showing. However, if the Court is inclined to consider the traditional requirements for injunctive relief, it will find that they have been satisfied as well.

First, plaintiffs have demonstrated a substantial likelihood that they will prevail on the merits. The "IDEA' mandate of a free, appropriate public education, and its prescription as to how it is to be provided, is unequivocal and defendants (ATA) unquestionably have failed to comply with those requirements. Plaintiffs' success on the merits is a virtual certainty.

Second, and most importantly, it is readily apparent that plaintiffs will suffer irreparable harm if injunctive relief is not granted. As aforementioned, the child

(Kenyahatta Wade) has suffered *de facto* termination from ATA-school[6] and the concurrent denial of a free appropriate public education as set forth above. As the court recognized in Cox v. Brown, 498 F. Supp. 823, 829 (D.D.C. 1980), "absent injunctive relief, [plaintiffs] will suffer the irreparable harm of lacking each day of their young lives an appropriate education, one that is sensitive to their particular disabilities, commensurate to their levels of understanding, and fulfilling of their immediate needs."

The longer ATA goes with its *de facto* termination of plaintiffs from school and denial of the necessary determinations, evaluations, services, and placements, the more these children will suffer and the more difficult it will be to mitigate the damage.

The third prong of the traditional test for injunctive relief is harm to the defendant. Here, *sub judice*, there can be no harm in granting relief that simply requires defendants (ATA) to meet their undisputed legal obligations. Although ATA as a D.C. public charter school will have to spend time and money to admit the return of two little girls and perform its legal duties, "the right . . . to receive a free appropriate education . . . cannot be constricted by monetary limitations." Cox, *supra* 498 F. Supp. at 830. *See also* Mills v. Board of Education of the District of Columbia, 348 F. Supp. 866, 878 (D.D.C. 1972) (decided prior to enactment of federal statute) ("defendants shall not exclude any child resident in the District of Columbia from such publicly-supported education on the basis of a claim of insufficient resources").

Finally, a grant of injunctive relief in this case is in the public interest. The public interest clearly is served by ensuring that officials of a D.C. public charter

---

[6] As aforementioned, Lexus Cain is the sister of special needs student Kenyahatta Wade. Lexus Wade was denied the right to return to ATA-school in retaliation because of her sister's "IDEA" litigation before a D.C. administrative agency.

12

school (ATA) at consistently within the law in providing students with disabilities with a free, appropriate public education. Conversely, no public interest is served by permitting defendants (ATA) to act (or to refuse to act) in utter disregard of plaintiffs' statutory and constitutional rights. The public's interest is entirely consistent with plaintiffs' interests in this matter.

### A. "IDEA" does not require bond or surety consideration *sub judice*

LCvR 65.1.1 requires any bond or surety question in a TRO matter to be set by Court Order or by consent of the parties. The circumstances and law in this "IDEA" case do **not** require, or warrant, posting of a bond or surety. LCvR 67.1. Moreover, as noted above, the defendants will suffer no substantial harm whatsoever where injunctive relief is granted in this case. Furthermore, plaintiffs have a substantial likelihood of success and a very limited income as inner-city N.E. Washington, D.C. residents, thus a bond or surety would serve no legal purpose, or public interest, but to deny plaintiffs the necessary and proper relief prayed for herein.

## V. CONCLUSION

Absent immediate injunctive relief, the child with disabilities for whom defendants are required by law to provide a free, appropriate public education will be deprived of that education. The time and learning opportunities lost cannot be regained. The loss, in itself, constitutes irreparable harm. The determinations, evaluations, services, placements to meet the child's special education rights are currently being violated by defendants (ATA), and each day the child is denied the right to return to school causes further irreparable harm. Moreover, if this Court finds that the special

education student (Kenyahatta Wade) should be granted injunctive relief, *sub judice*, equity and reason would justify granting her sister the right to return to ATA. The *de facto* termination of the special education child caused the *de facto* removal of her sister (Lexus Cain). An injunction to protect plaintiffs' legal rights is both warranted and essential.

                                                        Respectfully submitted,

                                                        Roy Carleton Howell, No. 415142
                                                        8003 Parkside Lane, N.W.
                                                        Washington, D.C. 20012
                                                        Phone  (202) 545-0750
                                                        Phone  (202) 545-0755

                                                        Attorney for Plaintiffs