## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TRACY CAIN )
Parent and Next Friend of K.W., )
And Parent and Next Friend of L.C. )
)
          Plaintiffs, )
)
v. )     Civil Action No.: 1:05 CV 01773
)
ARTS & TECHNOLOGY ACADEMY )
PUBLIC CHARTER SCHOOL, )
)
          Defendant. )
)
)

## DEFENDANT ARTS & TECHNOLOGY ACADEMY
## PUBLIC CHARTER SCHOOL'S OPPOSITION TO PLAINTIFF'S
## MOTION FOR TEMPORARY RESTRAINING ORDER

Defendant Arts and Technology Academy Public Charter School (ATA) hereby

opposes Plaintiff Tracy Cain's, the parent and next of friend of K.W and L.C.[1], motion

for a temporary restraining order.  Plaintiff's motion is procedurally deficient, and

Plaintiff misstates (unverified) facts surrounding this matter and fails to support the

appropriateness of a temporary restraining order.  While the parent claims the children

were denied admission to the school based on K.W. being identified as a child who may

have a disability, and her older sister, L.C., are in fact not presently enrolled at ATA

because of the application of a neutral rule applicable to all students in the District of

---

[1] While Plaintiff used the children's initials and full names in its filing, ATA uses initials and redacts the
children's full names from supporting exhibits.  An unredacted copy can be provided upon request.

Columbia, which is the requirement to provide a school with the required residency verification information prior to enrollment.

## I.    FACTS

### A.    The Parties

The Defendant ATA is a public charter school that received its charter in the fall of 1999. It is located in north east Washington D.C. approximately one mile from Prince George's County, Maryland. It has approximately 615 students in pre-kindergarten through sixth grade.

The Plaintiff is a parent and next friend of both K.W. and L.C. K.W. was promoted to the third grade, and her sister, L.C., was promoted to the sixth grader for this school year. K.W. has attended ATA since kindergarten. L.C. began at ATA as a second grader. In March 2005, K.W. was identified as a student who may be eligible for special education and related services. L.C. has not been identified as a child with a disability. Plaintiff alleges that ATA retaliated against L.C. in response to the K.W.'s potential special education needs. See Plaintiff's Memorandum of Points and Authorities at p. 4.

### B.    The Enrollment Status of K.W. and L.C.

Enrollment in a District of Columbia public charter school is open to all students who are residents of the District. See D.C. Code 38-1702.07. If space permits, non-residents may pay tuition to attend a charter school. The enrollment term at ATA is for one year only. See Aff. of E. Greene at Ex. A. Thus, all students must re-enroll each year. The re-enrollment process for current students consists of two steps. First, a parent must complete the re-enrollment commitment form between February 1 and March 31. This form is date-stamped to identifying ATA's receipt of it. Ms. Cain submitted this

form on February 14, 2005 for both K.W. and L.C.  See Ex. D.  The enrollment form clearly states that re-enrollment is not complete.  The second step of the enrollment process requires residency verification, which can only begin on July 1.

Parents must provide proof of their District of Columbia residency by presenting, among other things, a current motor vehicle registration, a valid lease or rental agreement, utility bills, proof of payment of D.C. personal income tax, a current pay stub, current military housing orders, or a valid court order indicating that the student is a ward in the District of Columbia.  D.C.M.R. Tit. 5, ch. 9, §916.  If a parent fails to complete the second step, a child cannot be enrolled in the school.  See id.  The enrollment policy is also clearly stated in the Parent Handbook, which is distributed yearly.  See Aff. of E. Greene at Ex. A; Ex. E.

For the 2005-2006 school year, parents were instructed to bring in the proof of residency to ATA between July 1 and July 15.  The information cannot be provided prior to July 1.  ATA makes several efforts to remind parents of the residency verification step. A letter reminding parents of the needed residency verification was sent via first class mail on June 13, 2005.  See Aff. of T. Preston at Ex. B; Ex. F.  A second letter was also sent by first class mail on August 4, 2005.  See Aff. of T. Preston at Ex. B; Ex. G. Neither of the letters sent to Ms. Cain were returned to the school.  See Aff. of T. Preston at Ex. B.  ATA attempted to call the Plaintiff on both July 19 and August 12, 2005, however, the telephone number listed by the Plaintiff on the re-enrollment form was disconnected.  See Aff. of T. Preston at Ex. B; Ex. H.  At that time, ATA did not have another telephone number for the Plaintiff.  Id.

ATA continued to accept the residency verification documentation for the students with completed re-enrollment forms through August 12, 2005.  On August 16, 2005, ATA started enrolling students on its wait lists.  The waiting lists consisted of new students and students who, like K.W. and L.C., had re-enrolled, but did not provide the required residency verification.  <u>See</u> Aff. of E. Greene at Ex. A; Aff. of T. Preston at Ex. B.  For this school year, there were approximately 230 total students on ATA's waiting lists for pre-K through 6th grade.  <u>See</u> Aff. of T. Preston at Ex. B.  Approximately ten percent of those on the waiting list have been identified as students with a disability.  There is a waiting list for each grade level.  When ATA began contacting students on the third grade waiting list, it had approximately twenty to twenty-five students.  <u>Id</u>.  The waiting list for the sixth grade also had twenty to twenty-five students.  <u>Id</u>.

The Plaintiff's children have attended ATA for the past four years, during which the same enrollment procedure has been in place.  For each of the four years, Ms. Cain provided the necessary residency verification information.

On August 25, 2005, Ms. Cain brought her residency verification information to ATA.  Shortly after, a slot in the 6th grade became available and was offered to the Plaintiff for L.C.  <u>See</u> Aff. of T. Preston at Ex. B.  The Plaintiff declined the sixth grade slot.  <u>Id</u>.  On August 31, 2005, the Plaintiff withdrew both students from ATA.  <u>See</u> Ex. I.

### C.  *Constraints on ATA's Class size.*

ATA's sixth grade presently has 74 students and is divided into three classes.  <u>See</u> Aff. of E. Greene at Ex. A.  The third grade presently has 80 students and is divided into three classes as well.  <u>Id</u>.  The number of chairs, desks, instructional materials is based on the projected class size of twenty-five.  <u>See</u> Aff. of E. Greene at Ex. A.   Teachers prepare

4

to teach a class of twenty-five and additional students compromise their ability to provide the instruction. ATA does not have the resources including the physical space for an additional third grade student.

### D.    K.W. Has Yet to be Deemed Eligible For Special Education and Related Services.

Pursuant to 34 C.F.R. §300.531[2], a request for an initial evaluation of K.W. was submitted on March 17, 2005. <u>See</u> Aff. of T. King at Ex. C; Ex. J. Five days later, Dr. Paul Frye, a clinical psychologist, performed the psycho-educational evaluation on March 22 and again on April 4, 2005. <u>See</u> 34 C.F.R. §300.531; Ex. K. Typically, it takes four to six weeks for ATA to receive a report from the evaluation. Aff. of T. King at Ex. C.

The parent, through counsel, filed a due process hearing request with the District of Columbia Public Schools Student Hearing Office on June 6, 2005 alleging that ATA had failed to identify and evaluate K.W. These allegations were incorrect. ATA had identified K.W. as a child who may be eligible for special education or related services and had evaluated the student. <u>See</u> Ex. J and K. ATA simply needed to hold a multidisciplinary team (MDT) meeting to review the evaluation and determine whether K.W. was eligible for special education and related services under 34 C.F.R. §300.534.[3]

The parties entered into a settlement agreement on July 15, 2005. ATA's obligation under the settlement agreement was to hold the needed MDT meeting to review the evaluation during the first two weeks of school. <u>See</u> Ex. L. ATA has made

---

[2] Please note that under the Notice of Proposed Rulemaking issued under the Individuals with Disabilities Education Improvement Act of 2004, the U.S. Department of Education has proposed to renumber this section to be 300.301. Assistance to States for the Education of Children with Disabilities; Preschool Grants for Children With Disabilities; and Service Obligations Under Special Education—Personnel Development To Improve Services and Results for Children With Disabilities; 70 Fed. Reg. 35,782 (June 21, 2005 (to be codified at 34 C.F.R. pt. 300). The regulation will be substantively unchanged.
[3] As described in Footnote 1, under the Notice of Proposed Rulemaking this section will be recodified as 34 C.F.R. §300.306.

several efforts to hold the meeting. A letter of invitation was sent to Ms. Cain on August 19, 2005 proposing three dates for the MDT meeting. See Ex. M. ATA's special education teacher confirmed the meeting for August 30, 2005 by telephone. See Aff. of T. King at Ex. C. On August 30, 2005, ATA convened the necessary staff to review the evaluation and to perform the eligibility determination; however, Ms. Cain failed to attend the MDT meeting. Id. ATA then sent another letter of invitation to the Plaintiff proposing three new dates for the meeting. See Ex. M. Counsel for the parent also received a letter regarding the dates. See Ex. M. The Plaintiff has yet to respond. In any event, the enrollment decisions on K.W. and L.C. were made independent of K.W.'s special education eligibility.

## II.    ARGUMENT

Plaintiff has filed for a temporary restraining order, but in fact seeks to require affirmative action. See Plaintiff's Motion for Temporary Restraining Order at p. 1. Generally, the purpose of a temporary restraining order is to hold the status quo until the Court has an opportunity to hear a request for fuller relief. See e.g., Hospital Resource Personnel, Inc. v. United States, 860 F. Supp. 1554, 1556 (S.D. Ga. 1994). Yet, Plaintiff is not seeking to keep the status quo; instead, Plaintiff requests the immediate enrollment of K.W. and L.C. during the litigation of Plaintiff's complaint.

Even if the facts alleged could support the relief, the request is procedurally defective in that it completely lacks supporting verified facts which could enable a court to act. Both Federal Civil Procedure Rule 65(b) and Local Rule 65.1(c) require the specific facts alleged for a preliminary injunction to be "shown by affidavit or by a verified complaint." Plaintiff's motion is not supported by either affidavits or a verified

complaint. This procedural deficiency results in the Plaintiff's failure to substantiate her claims.

Ignoring this insufficiency, Plaintiff's request further fails under the traditional test for whether injunctive relief is appropriate. A preliminary injunction requires the moving party to demonstrate: (1) there is a likelihood of success on the merits; (2) irreparable harm to the movant; (3) an injunction would not substantially harm the rights of the defendants; and (4) an injunction would be in the public interest or at least not be adverse to the public interest. See e.g., Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 842-844 (D.C. Cir. 1977). In applying the facts to these four factors, it is clear that a preliminary injunction is not necessary.

### A.      The Plaintiff Will Not Succeed on the Merits.

Plaintiff argues that K.W. has suffered from a change in placement. This is a mischaracterization of the Individuals with Disabilities Education Act (IDEA) disciplinary requirements. See 20 U.S.C. §1415(k). K.W.'s placement at ATA is based upon the enrollment term, which ceased at the end of the 2004-2005 school year. See Aff. of E. Greene at Ex. A. At that time, a parent of a charter school student must complete the re-enrollment process or make other arrangements for the child's education. In fact, placement in the school at this point would be a new placement.

ATA is obligated under the July 15, 2005 settlement agreement to hold an MDT meeting to review the K.W.'s psycho-educational evaluation. ATA has made every effort to complete the MDT meeting, since ATA's Director of Student Support Services sent two letters of invitation offering six potential dates for the MDT meeting. The

7

Plaintiff confirmed August 30 the date for the meeting, and ATA arranged for the necessary personnel including a clinical psychologist, a special education teacher, and a general education teacher. Had the meeting taken place, the Plaintiff could have taken any eligibility determination and subsequent individualized education plan to K.W.'s next school. ATA is not withholding services from K.W. because the team has not yet determined what is appropriate for her educational needs.

The Plaintiff will not be successful on the claim that ATA has retaliated against L.C. because ATA is enforcing a neutral re-enrollment policy and applies to all children who attend charter schools in District of Columbia. Furthermore, ATA offered L.C. a slot in the sixth grade, but the plaintiff declined it. See Aff. of T. Preston at Ex. B.

### B.    *There is No Irreparable Harm to the Plaintiff.*

ATA is not the only school K.W. and L.C. may attend. A student in the District of Columbia is not required to attend a charter school. D.C. Code § 38-1702.05(h). A student may withdraw from a public charter school at any time and enroll in a District of Columbia public school. D.C. Code § 38-1802.06. By extension, if a child is not re-enrolled in a charter school, he or she can be enrolled in his or her local school. Here, the Plaintiff withdrew her children from ATA on August 31, 2005. See Affidavit of T. Preston at Ex. B; Ex. D. Thus, K.W. and L.C. can be immediately enrolled in their local District of Columbia public school.

Furthermore, ATA has attempted to and seeks to abide by the July15, 2005 settlement agreement. Thus, if the MDT meeting results in a determination that K.W. is eligible for special education, then the interim school will be able to immediately provide the necessary education and/or related services. Certainly if the Plaintiff is eventually

successful on her complaint, then a court could award compensatory education for K.W. Hence, the children will have not suffered any irreparable harm. They can receive third grade and sixth grade instruction during the litigation of this matter. There is no evidence in the record that the instruction at ATA is so unique.

### C.    *An injunction substantially harms the interest of ATA.*

ATA currently has a total of eighty children in its three third grade classes. ATA's target class size is twenty-five. ATA purchases instructional materials, desks, and supplies based on the target class size. <u>See</u> Aff. of E. Greene at Ex. A; Aff. of T. Preston at Ex. B. To place another child in one of the three classrooms would substantially harm the other children in that room. ATA simply has no additional space for one more third grader. Moreover, the Plaintiff declined the one slot available in the sixth grade. <u>See</u> Aff. of T. Preston at Ex. B.

### D.    *Admitting An Additional Child Is Adverse to the Public Interest.*

The final prong in the preliminary injunction analysis is whether the injunctive relief would harm or be adverse to the public interest. As discussed above, there are eighty children in ATA's third grade. In this matter, the other ATA students comprise the public interest and must be considered. Adding an additional student creates a strain on the teacher, the materials, the physical space, and may compromise the learning environment. <u>See</u> Aff. of E. Greene at Ex. A. ATA's enrollment policies are clear and mandated by the District of Columbia Code. Plaintiff did adhere to its enrollment policy, in effect for the past four years. <u>See</u> Aff. of T. Preston at Ex. B.

### III.    CONCLUSION

Plaintiff's motion for temporary restraining order fails both procedurally and upon a review of the facts in this matter. Defendant ATA respectfully requests that the motion be denied.

Respectfully Submitted,

*Christine D. Bell*

Christine D. Bell (D.C. Bar No. 472629)
Brustein & Manasevit
3105 South Street, N.W.
Washington, D.C. 20007
Tele: 202-965-3652
Fax: 202-965-8913


Counsel for Arts & Technology
Academy Public Charter School

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September 2005, a copy of the Defendant's Opposition to Plaintiff's Motion for Temporary Restraining Order was hand delivered to:

Roy Carleton Howell
8003 Parkside Lane, N.W.
Washington, D.C. 20012

Christine D. Bell

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TRACY CAIN                                )
Parent and Next Friend of K.W.,           )
And Parent and Next Friend of L.C.        )
                                          )
                     Plaintiffs,          )
                                          )
v.                                        )        Civil Action No.: 1:05 CV 01773
                                          )
ARTS & TECHNOLOGY ACADEMY                 )
PUBLIC CHARTER SCHOOL,                    )
                                          )
                     Defendant.           )
                                          )
                                          )

## ORDER

UPON consideration of Plaintiff's Motion for Temporary Restraining Order with accompanying memorandum and exhibits and Defendant's Opposition to the Motion along with supporting affidavits and exhibits, the Court hereby finds that Plaintiff's Motion must be DENIED.

Dated:                           _____
                                 United States District Court Judge